**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NICHOLAS KIRBY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALDEYRA THERAPEUTICS, INC., TODD C. BRADY, MICHAEL ALFERI, and BRUCE M. GREENBERG,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nicholas Kirby ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Aldeyra Therapeutics, Inc. ("Aldeyra" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Aldeyra securities between November 3, 2023 and March 16, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by

1

Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Aldeyra securities during the Class Period and was economically damaged thereby.

7.     Defendant Aldeyra describes itself as "biotechnology company devoted to discovering innovative therapies designed to treat immune-mediated diseases."

8.      Pertinent to this action is reproxalap, which is a novel reactive aldehyde species (RASP) inhibitor investigated by Aldeyra as a treatment for a variety of diseases, including dry eye disease.

9.      Defendant Aldeyra is incorporated in Delaware, and its head office is located at 131 Hartwell Avenue, Suite 320, Lexington, Massachusetts 02421.

10.      Aldeyra's common stock trades on the Nasdaq Stock Market LLC ("NASDAQ") under the ticker symbol "ALDX."

11.      Defendant Todd C. Brady ("Brady") has served as the Company's Chief Executive Officer at all times material to this action.

12.      Defendant Michael Alferi ("Alferi") has served as the Company's Head of Finance, principal financial officer, and principal accounting officer since August 31, 2024.

13.      Defendant Bruce M. Greenberg ("Greenberg") served as the Company's interim chief financial officer from May 10, 2022, until his resignation from that position, effective August 31, 2024.

14.      Defendants Brady, Alferi, and Greenberg are collectively referred to herein as the "Individual Defendants."

15.      Each of the Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      was directly involved in the day-to-day operations of the Company at the highest levels;

(c)      was privy to confidential proprietary information concerning the Company and its business and operations;

3

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

16.     Aldeyra is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

17.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Aldeyra under *respondeat superior* and agency principles.

18.     Defendant Aldeyra and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

19.     On November 3, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for the period ending September 30, 2023 (the "3Q23 Report"). The 3Q23 Report was signed by Defendants Brady and Greenberg.

20.     The 3Q23 Report stated that "[r]eproxalap has demonstrated broad-based, rapid-onset activity and consistent safety across a number of Phase 2 and Phase 3 clinical trials."

4

21.    This statement was materially false and misleading at the time it was made because the purportedly positive findings from the reproxalap clinical trials were, in reality, unreliable and not meaningful.

22.    On March 7, 2024, the Company filed with the SEC its annual report on Form 10-K for the year ending December 31, 2023 (the "FY23 Report"). The FY23 Report was signed by Defendants Brady and Greenberg.

23.    The FY23 Report stated that "[t]he validity of the RASP platform is supported by reproxalap, our first-in-class product candidate for the treatment of dry eye disease, which has demonstrated broad-based, rapid-onset activity and consistent safety across a number of Phase 2 and Phase 3 clinical trials."

24.    The FY23 Report further stated that "[i]n a number of Phase 2 and Phase 3 clinical trials in dry eye disease, reproxalap demonstrated consistent statistically significant and clinically relevant activity across a variety of symptoms and signs, occurring as early as within minutes of dosing."

25.    These statements in the FY23 Report were materially false and misleading at the time they were made because the purportedly positive findings from the reproxalap clinical trials were, in reality, unreliable and not meaningful.

26.    On February 28, 2025, the Company filed with the SEC its annual report on Form 10-K for the year ending December 31, 2024 (the "FY24 Report"). The FY24 Report was signed by Defendants Brady and Alferi.

27.    The FY24 Report stated that "[t]he validity of the RASP platform is supported by reproxalap, our first-in-class product candidate for the treatment of dry eye disease, which has

demonstrated broad-based, rapid-onset activity and consistent safety across a number of Phase 2 and Phase 3 clinical trials."

28.     The FY24 Report further stated that "[i]n a number of Phase 2 and Phase 3 clinical trials in dry eye disease, reproxalap demonstrated consistent statistically significant and clinically relevant activity across a variety of symptoms and signs, occurring as early as within minutes of dosing."

29.     These statements in the FY24 Report were materially false and misleading at the time they were made because the purportedly positive findings from the reproxalap clinical trials were, in reality, unreliable and not meaningful.

30.     On February 27, 2026, the Company filed with the SEC its annual report on Form 10-K for the year ending December 31, 2025 (the "FY25 Report"). The FY25 Report was signed by Defendants Brady and Alferi.

31.     The FY25 Report stated that "[t]he validity of the RASP platform is supported by reproxalap, our first-in-class product candidate for the treatment of dry eye disease, which has demonstrated broad-based, rapid-onset activity and consistent safety across a number of Phase 2 and Phase 3 clinical trials."

32.     The FY25 Report further stated that "[i]n a number of Phase 2 and Phase 3 clinical trials in dry eye disease, reproxalap demonstrated consistent statistically significant and clinically relevant activity across a variety of symptoms and signs, occurring as early as within minutes of dosing."

33.     These statements in the FY25 Report were materially false and misleading at the time they were made because the positive findings from the reproxalap clinical trials were unreliable and not meaningful.

34.     The statements contained in ¶¶ 20, 23, 24, 27, 28, 31, & 32 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) The results of the reproxalap clinical trials were inconsistent; (2) the inconsistency of the results rendered any positive findings from these trials unreliable and not meaningful; and (3) as a result, Defendants' statements about Aldeyra's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

35.     On March 17, 2026, before the market opened, the Company filed with the SEC a current report on Form 8-K, which stated the following, in relevant part:

> As reported under Item 7.01 of this Current Report on Form 8-K, on March 17, 2026, Aldeyra announced receipt of the 2026 Complete Response Letter. The 2026 Complete Response Letter stated that there is "a lack of substantial evidence consisting of adequate and well-controlled investigations … that the drug product will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in its proposed labeling" and that "the application has failed to demonstrate efficacy in adequate and well controlled studies in the treatment of signs and symptoms of dry eye disease." The 2026 Complete Response Letter also stated that the "**inconsistency of study results raises serious concerns about the reliability and meaningfulness of the positive findings**" and that "the totality of evidence from the completed clinical trials does not support the effectiveness of the product."

(Emphasis added)

36.     On this news, the price of Aldeyra stock went down by $2.99, or approximately 70.7%, to close at $1.24 per share on March 17, 2026.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Aldeyra securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Aldeyra, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aldeyra securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Aldeyra;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Aldeyra to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Aldeyra securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

9

44.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Aldeyra shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- As a public issuer, Aldeyra filed periodic public reports;

- Aldeyra regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Aldeyra's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Aldeyra was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

45.    Based on the foregoing, the market for Aldeyra securities promptly digested current information regarding Aldeyra from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

10

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Aldeyra securities during the Class Period.

51.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Aldeyra were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by

11

virtue of their receipt of information reflecting the true facts of Aldeyra, their control over, and/or receipt and/or modification of Aldeyra's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Aldeyra, participated in the fraudulent scheme alleged herein.

52.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Aldeyra personnel to members of the investing public, including Plaintiff and the Class.

53.    As a result of the foregoing, the market price of Aldeyra securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Aldeyra securities during the Class Period in purchasing Aldeyra securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

54.    Had Plaintiff and the other members of the Class been aware that the market price of Aldeyra securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Aldeyra securities at the artificially inflated prices that they did, or at all.

55.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members

of the Class for substantial damages which they suffered in connection with their purchase of Aldeyra securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

57.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of Aldeyra, and conducted and participated, directly and indirectly, in the conduct of Aldeyra's business affairs. Because of their senior positions, they knew the adverse non-public information about Aldeyra's business practices.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aldeyra's financial condition and results of operations, and to correct promptly any public statements issued by Aldeyra which had become materially false or misleading.

60.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aldeyra disseminated in the marketplace during the Class Period concerning Aldeyra's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aldeyra to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Aldeyra within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aldeyra securities.

13

61.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aldeyra.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 30, 2026

**THE ROSEN LAW FIRM, P.A.**

*/s/ Joshua Baker*
Joshua Baker (BBO # 695561)
Phillip Kim (*pro hac vice* to be submitted)
Laurence M. Rosen (*pro hac vice* to be submitted)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jbaker@rosenlegal.com
        pkim@rosenlegal.com
        lrosen@rosenlegal.com

14

15

*Counsel for Plaintiff*

Case 1:26-cv-11510    Document 1    Filed 03/30/26    Page 15 of 15